UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DAVID PARTON, ) | |
| ) | |
| ) | Civil No. 6:22-cv-00018-GFVT |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| JOHNNY PARTON, *et al.*, ) | **ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Defendants' Motion to Dismiss. [R. 15.] David, Johnny, and Timothy Parton jointly owned coal mining companies which dissolved and merged into Henley Mining, owned by just Johnny and Timothy, in early 2017. [R. 1 at 2-3.] In previous litigation between these parties, this Court determined Henley's value as a going concern as of January 31, 2017. [R. 1-8 at 2.] David later discovered that on four occasions during and surrounding the bench trial in that case, Henley distributed equipment to Johnny and Tim to satisfy liabilities that Henley owed them. [R. 1 at 4.] David alleges that the Defendants misled himself and the Court about Henley's value by not disclosing these distributions until after the Court entered judgment. *Id.* Consequently, he filed this action alleging fraud, negligent misrepresentation, and fraudulent transfer. *Id.* Only the fraudulent transfer claim survives dismissal, so the Motion to Dismiss **[R. 15]** is **GRANTED IN PART** and **DENIED IN PART**.

**I**

The Court provided a detailed factual background of this matter in its order granting David's Motion for Preliminary Injunction but will summarize the facts critical to the instant

motion. [R. 29 at 1-3.] David, Timothy, and Johnny Parton jointly owned a group of coal mining companies that ceased operations in 2016 after the brothers could not agree on the companies' continued operations. [R. 1-8 at 4-5.] On January 31, 2017, "Johnny and Tim Parton executed a 'squeeze-out' merger . . . and formed Henley Mining." *Id.* at 3. As part of the dissolution, Henley transferred equipment to David which necessitated equal distributions to Johnny and Tim. [R. 15-1 at 5.] Henley valued the distributions at $445,762.50 each ($891,525 total). [R. 1 at 4.] It did not distribute any assets to Johnny or Tim; rather, it recorded the distributions as an $891,525 liability on Henley's books. *Id.* at 5.

In the meantime, Henley filed a lawsuit against David in this Court, the main issue of which was determining the company's fair value. *Id.* at 3; *Henley Mining, Inc. v. David Parton*, 6:17-cv-00092-GFVT. The Court determined that Henley was worth $3,318,980 as a going concern as of January 31, 2017 (the date of the merger). [R. 1-8 at 15.] This entitled David to a $957,517.67 distribution, reflecting one-third of Henley's total value minus $148,809 he had already been paid. *Id.* The Court also determined that the distributions owed to Johnny and Tim were worth $282,500 each ($565,000 total), in contrast to the $891,525 total valuation that they recorded as a liability on Henley's books. *Id.* at 9.

After the Court entered Judgment, counsel for the Defendants contacted David with a settlement offer. [R. 1-6.] That offer stated that "well before the Judgment, Henley Mining, Inc. distributed the majority of its assets to Johnny and Tim in satisfaction of the distribution payable and other amounts loaned to the company." *Id.* The offer included records of four distributions that occurred between August 17, 2020 (the day before trial began) and December 15. *Id.* at 4. David filed this action in response, alleging that the distributions were fraudulent transfers and turn representations by the Defendants into fraud and negligent misrepresentation. [R. 1.]

2

## II

### A

First, the Defendants seek dismissal of Counts II (fraud) and III (negligent misrepresentation) under Rule 9(b)'s heightened pleading standard for allegations of fraud. [R. 15-1 at 7-12; R. 1 at 7-8.] Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This heightened pleading standard is balanced by "the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). At the same time, "a district court need not accept claims that consist of no more than mere assertions and unsupported or unsupportable conclusions." *Id*. (citing *Kottmyer v. Maas,* 436 F.3d 684, 688 (6th Cir. 2006)).

Counts II and III are both subject to this heightened standard. Count II alleges the common law tort of fraud, which encompasses fraudulent misrepresentation and fraudulent omission. [R. 1 at 7]; *Waldridge v. Homeservices of Ky., Inc.*, 384 S.W.3d 165, 171 (Ky. Ct. App. 2011). Count II does not specify whether David believes the Defendants engaged in fraudulent misrepresentation or fraudulent omission. [R. 1 at 7; R. 15-1 at 8.] The Complaint includes distinct elements of fraudulent omission but his Response outlines the elements of fraudulent misrepresentation. [R. 1 at 7; R. 20 at 10.] Nevertheless, both are subject to Rule 9(b). *See Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). Courts also apply the 9(b) standard to negligent misrepresentation, which David alleges in Count III. *Id.* at 247-48.

**1**

The Defendants ask the Court to dismiss Count II, to the extent that it alleges fraudulent misrepresentation, and Count III because the Complaint does not identify any specific statements that were allegedly false. [R. 15-1 at 8-9.] Count II alleges that the Defendants committed fraud by "not disclosing the August 17, 2020 distribution and pretending that Henley Mining still had all of the assets it had when the Lawsuit was filed." *Id.* The Defendants argue that this is insufficient to allege fraudulent misrepresentation because it alleges that the Defendants failed to disclose information, which is the opposite of an affirmative misrepresentation. [R. 15-1 at 8-9.] Count III, which alleges negligent misrepresentation, claims that the Defendants represented that Henley had the same assets during trial as it had when the lawsuit began and did so in the course of their business. [R. 1 at 7.] The Defendants similarly argue that this does not satisfy Rule 9(b) because it does not identify an affirmative false statement. [R. 15-1 at 10-12.]

David attempts to clarify the specific representations supporting his claims for fraud and negligent misrepresentation in his Response. He claims that the Defendants "falsely testified that Henley Mining had maintained certain assets" and cites Paragraphs 24, 43, 53, and 58 of the Complaint. [R. 20 at 10.] He also states that the "Defendants put forth false statements regarding the liquidation of some of Henley Mining's assets during trial," but does not provide a citation. *Id.* at 11.

Even as clarified by David's Response, the Complaint does not identify a specific misrepresentation underlying Count II or III. As applied to fraudulent misrepresentation, Rule 9(b)'s heightened pleading standard requires a plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Bear Stearns*, 683 F.3d at 247 (citing

*Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009)). Negligent misrepresentation also "requires [that a plaintiff plead] an affirmative false statement." *Bear Stearns*, 683 F.3d at 260 (quoting *Giddings & Lewis, Inc., v. Indus. Risk Insurers,* 348 S.W.3d 729, 744-45 (Ky. 2011) (alteration in original)).

Paragraphs 43 and 53 do not identify representations. [R. 1 at 6, 7.] They state, respectively, that "Henley Mining was insolvent at the time the distributions were made or these distributions rendered Henley Mining insolvent" and "Defendants deceived David Parton and the federal court by not disclosing the August 17, 2020 distribution and pretending that Henley Mining still had all of the assets it had when the Lawsuit was filed." *Id.* The former alleges Henley's actual financial state. *Id.* at 6. The latter is an omission and a vague claim that the Defendants "pretended," which is far from a specific representation. *Id.* at 7.

Paragraphs 24 and 58 at least discuss representations, but do not identify them with sufficient specificity. Paragraph 24 references claims Henley made "throughout the lawsuit," including expert witness testimony at trial. [R. 1 at 4.] A general reference to claims made "throughout the lawsuit" fails to identify a particular statement or when and where it was made. *See Bear Stearns*, 683 F.3d at 247. Expert witness testimony at trial is more specific but still insufficient. The Defendants presented two expert witnesses at trial, so the Court cannot even infer a specific representation or its speaker. [R. 1-8 at 3.] Paragraph 58 fares no better. It states that the "Defendants represented to David and the federal court that Henley Mining had the same assets during trial that it had when the Lawsuit was filed." [R. 1 at 7.] This allegation does not identify any such statements or when and where they were made.

David's fraudulent and negligent misrepresentation claims do not satisfy Rule 9(b)'s

5

heightened pleading standard. David invokes the Sixth Circuit's guidance that, while Rule 9(b) is a heightened standard, it is to be read liberally. [R. 20 at 9.] But the *minimum* requirement is that the plaintiff allege the time, place, and content of an allegedly fraudulent representation. *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Neither Count II, to the extent it raises fraudulent misrepresentation, nor Count III reaches this bar, so the Court dismisses both.

### 2

Next, the Defendants seek dismissal of Count II to the extent that it alleges fraudulent omission because it is "grossly insufficient." [R. 15-1 at 9-10.] Fraudulent omission, like fraudulent and negligent misrepresentation, is subject to Rule 9(b)'s heightened pleading standard. *Bear Stearns*, 683 F.3d at 255-57. David correctly points out that fraudulent omission need not identify the time, place, and content of an omission, in contrast to the requirements for representations. [R. 20 at 9 (citing *B.L. v. Schuhmann*, 380 F. Supp. 3d 614, 651 (W.D. Ky. 2019)).] But he still must plead: "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what Appellees obtained as a consequence of the alleged fraud." *Bear Stearns*, 683 F.3d at 256.

The Defendants first argue that Count II should identify which of them specifically should have disclosed the distribution. [R. 15-1 at 10.] Henley was the Plaintiff in the prior action and, as its owners, Johnny and Tim were also involved. *See Henley Mining, Inc. v. David Parton*, 6:17-cv-00092-GFVT. It is sufficient for David to state that any of the Defendants should have disclosed the distribution. He would have been satisfied if any of the Defendants informed him about the transfers, so he does not need to plead that any specific Defendant

should have done so.

The Defendants also argue that this claim should be dismissed because the Complaint does not identify a specific duty to disclose. [R. 15-1 at 10.] The existence of a duty to disclose is an essential element of a fraudulent omission claim. *Waldridge*, 384 S.W.3d at 171 (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 641 (Ky. App. 2003)). Kentucky recognizes four duties to disclose which can give rise to a fraud by omission claim: "a confidential or fiduciary relationship between the parties exists, or . . . a statute imposes such a duty, or . . . a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure." *Rivermont Inn*, 113 S.W.3d at 641.

The Complaint alleges that the Defendants had a duty to disclose because "the assets of Henley Mining were an issue at trial over that [sic] was heavily litigated." [R. 1 at 7.] This is not one of the four specific duties to disclose. *See Rivermont Inn*, 113 S.W.3d at 641. Count II does not identify a duty with the particularity which Rule 9(b) requires because it does not specify how "heavily litigat[ing]" the issue imposes a duty to disclose. *See Truck and Auto Extras, LLC v. Anderson*, 2020 WL 3578348, at *8 (E.D. Ky. July 1, 2020). Perhaps this constitutes a partial disclosure, but the Complaint does not establish this to the standard of specificity which Rule 9(b) requires. David notably does not clarify, or address at all, the duty to disclose in his Response to the Motion to Dismiss. [R. 20]; *see id.* The Court also dismisses Count II to the extent it alleges fraud by omission.

### 3

The Defendants alternatively argue that the Court should dismiss David's fraud and negligent misrepresentation claims because the judicial statements privilege protects the underlying statements. [R. 15-1 at 12-13.] The Restatement (Second) of Torts § 588 explains

7

this privilege: "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." *See Smith v. Hodges*, 199 S.W.3d 185, 193 (Ky. Ct. App. 2005) (adopting § 588).

a

David argues that the privilege only "protects witnesses against defamatory torts" and does not apply to his fraud and negligent misrepresentation claims. [R. 20 at 8.] The caselaw refutes this argument. The Restatement does refer to "defamatory matter." Restatement (Second) of Torts § 588. However, courts apply the privilege to many torts beyond defamation. It clearly applies to Count II because the Kentucky Court of Appeals has applied it to both fraudulent misrepresentation and fraudulent omission. *Deal v. First and Farmers Nat'l Bank, Inc.*, 518 S.W.3d 159, 173 (Ky. Ct. App. 2017); *see also Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 185 (Ky. Ct. App. 2014) (applying the judicial statements privilege to fraud in the inducement).

The Court is unaware of any Kentucky case resolving whether the judicial statements privilege applies to *negligent* misrepresentation. The Kentucky Court of Appeals defined the scope of the privilege in *Halle*. 453 S.W.3d at 185. It explained that the privilege is limited to judicial communications and does not cover conduct. *Id.* (citing *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2014), overruled on other grounds, *Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019)). Specifically, the privilege "extends only to bar tort claims stemming directly from the content of the judicial statements themselves." *Morgan & Pottinger*, 348 S.W.3d at 606 (Noble, J., dissenting).

The privilege applies to David's negligent misrepresentation claim because it is based on

8

the content of the Defendants' statements. He claims that they "represented to [him] and the federal court that Henley Mining had the same assets during trial that it had when the lawsuit was filed." [R. 1 at 7.] Although this does not identify any specific representation, the claim is clearly premised on the content of the Defendants' statements regarding Henley's financial state. This is consistent with Kentucky courts' use of broad language to discuss the scope of the privilege. For example, the Kentucky Court of Appeals stated that "a cause of action" or "an action" is "unsustainable" if it is based on statements made preliminary to or during a judicial proceeding. *Halle*, 453 S.W.3d at 184. Accordingly, the judicial statements privilege also applies to David's negligent misrepresentation claim.

**b**

Having determined that the judicial statements privilege is applicable to Counts II and III, the Court must determine whether the privilege protects the statements underlying those claims. The privilege bars actions premised on statements which (1) were "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding" and (2) had "some relation to a proceeding that is contemplated in good faith and under serious consideration." *Halle*, 453 S.W.3d at 184 (citing *Rogers v. Luttrell*, 144 S.W.3d 841, 843-44 (Ky. Ct. App. 2004)). Judicial proceedings "include all proceedings in which an officer or tribunal exercises judicial functions." *Morgan & Pottinger*, 348 S.W.3d at 602 (quoting Restatement (Second) of Torts § 587 (1977)).

Again, the Complaint does not identify any specific statements. But even its bare allegations are limited to statements made preliminary to or during a judicial proceeding. The Complaint alleges that "throughout the Lawsuit, Henley Mining claimed that it was insolvent," and that it "presented expert witnesses who testified under oath at trial that Henley Mining was

9

unable to continue operations." [R. 1 at 4.] To the extent that these statements were at trial, trial is unquestionably a judicial proceeding. *See Keal v. Mashburn*, 2022 WL 188199, at *2 (Ky. Ct. App. Jan. 21, 2022). The judicial statements privilege also applies to expert witnesses' statements. *See New Albany Main Street Props., LLC v. Stratton*, 2022 WL 1695881, at *7 (Ky. Ct. App. May 27, 2022). Other statements made "throughout the lawsuit" are likely also privileged because "the privilege encompasses written statements in pleadings as well as the statements of witnesses in judicial proceedings." *Maggard*, 576 S.W.3d at 567 (citing *Schmitt v. Mann*, 163 S.W.2d 281, 283 (1942)).

The statements were also related to the judicial proceeding. David takes issue with the Defendants' representations that Henley was insolvent. [R. 1 at 4.] The purpose of the litigation was to determine Henley's value, so statements that the company was insolvent were clearly "pertinent and material to the matter at issue." *Maggard*, 576 S.W.3d at 567 (citing *Schmitt*, 163 S.W.2d at 283); [*see* R. 1-8]. The judicial statements privilege protects the Defendants' statements and bars David's claims for fraud and negligent misrepresentation.

Ultimately, multiple grounds support the dismissal of Counts II and III. To the extent Count II raises fraud by omission, it does not satisfy Rule 9(b) because it does not identify a specific duty to disclose. Counts II—to the extent it raises fraudulent misrepresentation—and III do not satisfy Rule 9(b) because they do not identify any specific representations. Additionally, the judicial statements privilege bars Counts II and III because both are premised on privileged statements.

**B**

Next, the Defendants ask to dismiss Count I, which alleges fraudulent transfer in violation of KRS 378A.050. [R. 1 at 6.] Unlike Counts II and III, the Court considers Count I

10

under the typical Rule 12(b)(6) standard.[1]  The Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  The Court, however, "need not accept as true legal conclusions or unwarranted factual inference." *Id.*  (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  A complaint survives a motion to dismiss so long as it 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

The Complaint alleges that the Defendants' distributions were fraudulent transfers because Henley did not receive equivalent value and they made Henley insolvent.  *Id.*  The Defendants argue that the Court should dismiss this claim because (1) it is time-barred and (2) the distributions were not fraudulent because Henley received reasonably equivalent value in exchange.  [R. 15-1 at 13-16.]

The Court addressed both of the Defendants' arguments in its Order granting the preliminary injunction.  [R. 1-8.]  In that Order, the Court noted that the pleadings are unclear as to which section of Kentucky's Uniform Voidable Transfer Act supports Count I.  [R. 29 at 4.]  It stated:

> The Complaint cites to KRS § 378A.050 as a whole, though it quotes § 378A.050(1), and the Motion for Preliminary Injunction only refers to § 378A.050(1).  [R. 1 at 6; R. 6 at 4-5.]  But in his Reply, David argues he is likely to succeed on his claim under § 378A.050(2).  At the hearing, the Court asked him which provision he was proceeding under, and he presented arguments as to both.  [*See* Tr. at 4-6.]

---

[1] This provision of the Uniform Fraudulent Transfer Act governs constructive, not actual fraud.  *See In re Souheast Waffles, LLC*, 460 B.R. 132, at 137-38 (B.A.P. 6th Cir. 2011).  Constructive fraudulent transfer is not subject to Rule 9(b)'s heightened pleading standard because it does not require proof of actual fraud.  *In re Great Lakes Comnet, Inc.*, 588 B.R. 1, 22 (Bankr. W.D. Mich. 2018).

11

*Id.* The Court concluded that David "is unlikely to succeed under KRS § 378A.050(2), but likely to succeed under (1)." *Id.* Although the Court already addressed these arguments under the preliminary injunction standard, it analyzes them again as they apply to the Motion to Dismiss.

### 1

First, the Defendants seek dismissal of Count I to the extent it is raised pursuant to KRS § 378A.050(2) because it is time-barred. [R. 15-1 at 15-16.] The KUVTA's limitations period states the claim is extinguished unless it is brought:

> (1) Under KRS 378A.040(1)(a), not later than four (4) years after the transfer was made or the obligation was incurred or, if later, not later than one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant;
>
> (2) Under KRS 378A.040(1)(b) or 378A.050(1), not later than four (4) years after the transfer was made or the obligation was incurred; or
>
> (3) Under KRS 378A.050(2), no later than one (1) year after the transfer was made.

KRS § 378A.090. Accordingly, if the claim is under KRS § 378A.050(2), it is subject to a one-year statute of limitations. *Id.* at (3).

The Court analyzed this argument in its Order granting the preliminary injunction. [R. 29 at 4-6.] It found that Section (3) is not subject to the discovery rule because, unlike (1), it does not include discovery-based language. *Id.* David filed suit in 2022, over a year after the last allegedly fraudulent transfer occurred on December 15, 2020. [R. 1 at 4.] KRS § 378A.090(3) makes his claim time-barred to the extent that it is based on KRS § 378A.050(2). Accordingly, the Court dismisses Count I to the extent it is raised under KRS § 378A.050(2)

### 2

In contrast, Count I states a plausible claim for relief under KRS § 378A.050(1). KRS § 378A.050(1) provides:

12

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

The Defendants concede that at this stage, the Court must accept as true David's allegations that his claim arose before the transfer and that Henley was insolvent at the time. [R. 15-1 at 16.] But they argue that Henley received a reasonably equivalent value in exchange for the distribution. *Id.* at 16-19.

All of the transfers satisfied liabilities that Henley owed to Johnny and Timothy, including the Distribution Payables which the Court valued in the prior case. [*See* R. 7-3; R. 7-4; R. 7-5; R. 7-6; R. 1-8 at 9.] The KUVTA specifically states that satisfaction of an antecedent debt constitutes value, so Henley could have transferred assets to satisfy these liabilities without violating KRS § 378A.050(1). KRS § 378A.030(1). The issue is whether the value of the satisfied debt was reasonably equivalent to the value of the transferred equipment. For the purpose of this claim, the values are determined as of the date of the transfer. *See Valley City Steel, LLC v. Liverpool Coil Processing, Inc.*, 336 Fed. App'x 531, 534 (6th Cir. 2009).

This issue was the primary focus of the preliminary injunction hearing. In issuing the preliminary injunction, the Court had to determine whether David was likely to succeed on his claim that the distributions were not in exchange for a reasonably equivalent value. [R. 29 at 9-13.] The Court used its value determination in the prior lawsuit between these parties, which was as of the date of the merger, to estimate the equipment's value as of the date of the transfer. [R. 29 at 9-13; R. 1-8.] It found that the value of the transferred assets was "significantly greater than the Defendants' valuation and the amount of satisfied debt Henley received" in return. *Id.* at 13. As a result, it concluded that "David will likely be able to successfully show the actual

13

value of the transferred equipment exceeded the amount of satisfied debt." *Id.*

Now, the Defendants repeat the arguments they presented on this issue in their opposition to the preliminary injunction. They argue that the value of the liabilities should be determined by their belief in the value of the liability at the time of the transfer, not what the court later determined the value to be. [R. 15-1 at 18-19.] They also rely on their internal valuations of the transferred equipment, not the Court's valuation. *Id.*

First, the relevant value of the assets and liabilities is the *actual* value on the date of the distribution, not the Defendants' perceived value. In resolving this issue previously, the Court relied on *Chomakos*, which "actually determined the objective value of the transferred property." [R. 1-8 at 11 n.4 (citing 69 F.3d at 770-72).] Other cases determining whether an entity received a "reasonably equivalent value" also focus on actual value. *See In re Gabor*, 280 B.R. 149, 164 (Bankr. N.D. Ohio 2002) (reducing the value of a home to its "actual value" because of latent defects later discovered); *United States v. Key*, 837 Fed. App'x 348, 353 (6th Cir. 2020) (applying *Chomakos* to the Federal Debt Collection Procedures Act). The Defendants provide no support for their assertion that they "were entitled to rely on" their valuation of the liability on the date of the transfer. [*See* R. 15-1 at 18.] As in its preliminary injunction order, the assets and liabilities' actual, not believed value, as of the date of the transfer is the relevant amount.

The Complaint plausibly establishes that the value of the transferred equipment was not reasonably equivalent to the value of the satisfied debts. It alleges that the Defendants justified the transfers by using them to satisfy the "$891,525 'on the books' liability" for the Distribution Payable. [R. 1 at 5.] In reality, David claims that the Defendants provided "no value . . . and certainly not reasonably equivalent value" for the transfers. *Id.* at 6. The Court's Findings of Fact from the prior case supports his claim that the transfers were not for a reasonably equivalent

14

value. [R. 1-8.] It found that the Distribution Payables were worth a total of $565,000, significantly less than their "$891,525 'on the books'" valuation. *Id.* at 9.

The Court also found that the transferred assets were worth substantially more than the Defendants valued them. *See id.* at 9-11. There is a three-year difference between these valuations because the Court's valuation was as of 2017 and the valuation relevant to this Motion is late 2020. But the Complaint at least states a plausible claim for relief because the Defendants' recorded valuations in the distribution records are substantially less than the Court's prior determination, even taking an eight-percent yearly depreciation into account. [*See* R. 29 at 11-13.] Ultimately, Count I survives dismissal. It is plausible that the transfers were not for a reasonably equivalent value because the Defendants overvalued the amount of debt that the transfers could have satisfied and undervalued the transferred assets.

## C

Finally, the Defendants ask the Court to dismiss Counts IV and V, David's "claims" for punitive damages, attachment, and a writ of possession because they are remedies. [R. 15-1 at 19-20.] David did not respond to this argument. [*See* R. 20.] Counts that are remedies rather than separate causes of action are proper to dismiss. *See Goryoka v. Quicken Loan, Inc.*, 519 Fed. App'x 926, 929 (6th Cir. 2013).

The Defendants are correct that the three remedies sought across these two Counts are not causes of action. *See 859 Boutique Fitness LLC v. Cyclebar Franchising, LLC*, 2016 WL 2599112, at *3 (E.D. Ky. May 5, 2016); *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 816344 at *11 (N.D. Ohio Mar. 4, 2010). But although the Complaint is "inartfully styled," the Court will not dismiss the Counts. *See Hitachi*, 2010 WL 816344 at *11. One underlying cause of action, fraudulent transfer, survives. Maintaining the Counts allows David to maintain his

15

remedial requests which may still be viable. *See McClure v. Leafe*, 2018 WL 4637339, at *7 (E.D. Mich. Sept. 27, 2018). Accordingly, the Court will not dismiss these Counts but notes that they are remedies, not distinct causes of action.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion to Dismiss **[R. 15]** is **GRANTED IN PART** and **DENIED IN PART**;

2. Counts II and III of the Complaint **[R. 1]** are **DISMISSED**.

This the 17th day of February, 2023.

Gregory F. Van Tatenhove
United States District Judge